UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CESIA MONCADA,**<br><br>Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>Defendant. | Civ. No. 2:13-00195 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Cesia Moncada brings this action pursuant to 42 U.S.C. § 405(g), seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

**I.    LEGAL STANDARDS**

   **A.    The Five-Step Sequential Analysis**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step

four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

> **B.** Standard of Review

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

## II. BACKGROUND

On May 18, 2009, Plaintiff filed an application for a period of disability and DIB. The filings alleged that Plaintiff had a disability beginning February 8, 2008, due to osteoarthritis and depression. Plaintiff's application was denied initially on January 4, 2010, and again upon reconsideration on July 12, 2010. On June 27, 2011, Plaintiff, Maria Zapata, who is Plaintiff's mother, and Rocco Meola, a vocational expert, testified at a hearing before Administrative Law Judge Donna A. Krappa (the "ALJ"). On September 19, 2011, the ALJ issued a decision finding that Plaintiff was not disabled. The ALJ found that Plaintiff's impairments were severe, but did not meet or equal the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. The ALJ further found that Plaintiff retained the residual functional capacity ("RFC") for light work. The ALJ then found that while Plaintiff could no longer perform her past work as a warehouse clerk, there were a significant number of jobs in the national economy that she remained capable of performing. The Appeal's Council denied Plaintiff's request for review, and she filed the instant action.

## III.  DISCUSSION

Plaintiff challenges the ALJ's decision on several grounds.  Specifically, Plaintiff argues that the ALJ: (1) failed to adequately evaluate her impairments in light of the listings at steps two and three; (2) did not adequately consider the record evidence in connection with her RFC determination; and (3) incorrectly relied on vocational expert testimony that did not account for all of Plaintiff's limitations at step five.

### A. Substantial evidence supports the ALJ's finding that Plaintiff does not have a listing-level impairment.

At step two, the ALJ found that Plaintiff had two severe impairments:  a back impairment and depression.  At step three, the ALJ found that these impairments did not meet the requirements of listings 1.04A or 12.04.  Plaintiff seems to argue that the ALJ incorrectly characterized several "separate pathologies" affecting Plaintiff's lumbar spine as a back impairment.[1]  However, Plaintiff provides no support for why the ALJ's characterization of Plaintiff's condition as a back impairment reviewable under listing 1.04A was in error.  In fact, most of these "separate pathologies" are explicitly identified in listing 1.04A as examples of disorders of the spine.  Plaintiff also fails to identify any other listings that the ALJ should have considered.  The Court thus finds that the ALJ's characterization of Plaintiff's ailments as a back condition reviewable under listing 1.04 was not in error.

Moving to step three, Plaintiff argues that the ALJ failed to consider her impairments in combination and did not adequately evaluate the record evidence.  The Court disagrees.

At step three, an ALJ must consider each of the claimant's individual conditions and determine whether they meet or equal any listed impairment.  Where the claimant has "a combination of impairments, no one of which meets a listing . . . [the ALJ] will compare [the claimant's] findings with those for closely analogous listed impairments." 20 C.F.R. § 404.1526(b)(3).  For a combination of impairments to be medically equivalent to one in the listings, it must be "at least of equal medical significance." *Id.*

---

[1] The "separate pathologies" identified by Plaintiff include:  (1) multi-level disc degeneration, (2) herniated and bulging lumbar discs, (3) bilateral inflammation of the sacroiliac joints, and (4) chronic degenerative process with diffuse bulging annulus and loss of disc height at L5-S1.

3

Here, the ALJ specifically found that Plaintiff "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." (R. at 22.) "[W]here the ALJ has indicated that the impairments have been considered in combination, there is 'no reason not to believe' that the ALJ did so." *Gainey v. Astrue*, Civ. No. 10-1912, 2011 WL 1560865, at *12 (D.N.J. Apr. 25, 2011) (citing *Morrison v. Comm'r of Soc. Sec.*, 268 Fed. App'x 186, 189 (3d Cir. 2008)). Additionally, after reviewing the decision as a whole, the Court finds that the ALJ's development of the record and explanation of findings at step three is sufficient to allow for meaningful review, as required under *Burnett*. *See Burnett v. Commissioner of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000). *Burnett* "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Instead, a reviewing court should look at the decision as a whole to determine whether the ALJ considered the appropriate factors. *Id.* Here, the ALJ's analysis of the medical evidence in light of the musculoskeletal and mental disorder listings was comprehensive enough for meaningful review. The ALJ considered Plaintiff's lumbosacral back impairment, including the record evidence revealing degenerative joint disease in Plaintiff's spine, finding that she did not meet Listing 1.04A. (R. at 15, 17-20.) Further, the ALJ discussed the limitations in functioning created by Plaintiff's mental impairments throughout the opinion, finding those impairments did not meet any mental disorder listing. (R. at 15, 18-19.) Finally, Plaintiff argues that the ALJ did not adequately consider her mother's testimony when evaluating her impairments. However, the ALJ specifically recognized that Plaintiff received help from her family in performing some daily activities. (R. at 15, 17.)

Finally, the record contains substantial evidence supporting the ALJ's determination that Plaintiff's conditions do not equal a listing-level impairment. (*See* R. at 180-87, 252-58, 278, 292, 269, 310-13.) The Court thus affirms this determination.

### A.   Substantial evidence supports the ALJ's RFC assessment.

At step four, the ALJ concluded that Plaintiff had the RFC necessary to perform "light" work, subject to certain physical and mental restrictions. Plaintiff argues that the ALJ failed to adequately assess the record evidence when making this RFC assessment. More specifically, Plaintiff argues that the ALJ erroneously discounted the opinion of her treating physician, Dr. Jose Marmol, in favor of the opinion of a state agency consultant. Plaintiff also argues that the ALJ fails to

adequately consider Plaintiff's subjective complaints of pain and ability to deal with stress.

Contrary to Plaintiff's assertions, the ALJ's decision as it pertains to Plaintiff's RFC is thorough, exhaustive, and more than sufficient to permit the Court to conduct a meaningful review. *See Burnett*, 220 F.3d at 119-20. The ALJ's decision incorporates details of Plaintiff's medical history, as documented by Plaintiff's medical records, at length and throughout her RFC assessment. (R. at 16-20.) The ALJ considered the results of an MRI of Plaintiff's spine performed in June 2009. (R. at 18-19.) The ALJ correctly noted that, as to Plaintiff's allegations of leg shaking, numbness and tingling in her left leg, and cramping toes, "the evidence lacks any mention of neurological deficits of the claimant's lower extremities." (R. at 18.) The ALJ also considered reports from Dr. Iras A. Drey, a treating orthopedist, and Dr. Elena Napolitano, who conducted an orthopedic consultative examination. (*Id.*) Those reports stated that that Plaintiff had a full range of motion in her lower extremities and described her as neurologically intact. (*Id.*) And the ALJ also considered opinions of Dr. Marmol and a state agency medical consultant, Dr. A.M. Pirone. Dr. Prione confirmed an initial state agency RFC assessment – which found Plaintiff able to engage in light work activity. (R. at 19-20, 296-303, 306-307.) As to Plaintiff's mental state, the ALJ relied on an assessment from Dr. Roysto Cruickshank, a treating source, to find that Plaintiff had "mild symptoms or some difficulty in social and occupational functioning." (R. at 18-19.) Through the decision, the ALJ indicates both the evidence she accepts and the evidence she rejects and provides reasons for discounting such evidence. *See Burnett*, 220 F.3d at 121.

Moving to Plaintiff's more specific arguments, Plaintiff first takes issue with the ALJ's decision to discredit the opinion of Dr. Marmol, her treating physician. (R. at 20.) But an ALJ is free to choose one medical opinion over another where the ALJ considers all of the evidence and gives some reason for discounting the evidence he rejects. *See Diaz v. Commissioner of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ . . . may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."). In this case, the ALJ detailed her reasons for discounting Dr. Marmol's opinion. She explained that Dr. Marmol's findings contained internal inconsistencies. Specifically, Dr. Marmol's opined both that Plaintiff could "walk up to six hours per day" and that Plaintiff could stand or walk "less than two hours per day." (R. at 19.) The ALJ also noted that Dr. Marmol's treatment records contain no progress notes regarding Plaintiff's

5

complaints of pain or functional abilities, and instead are limited to test results.[2] And the ALJ explained that Dr. Marmol's assessed limitations were inconsistent with the other record evidence, including: (1) Plaintiff's reported daily activities (R. at 180-87), (2) clinical findings from Plaintiff's treating orthopedist, Dr. Drey (R. at 278), (3) Dr. Napalitano's orthopedic findings (R. at 292, 294-95), and (4) an MRI taken in June 2009 (R. at 255). Accordingly, the ALJ did not err by discounting Dr. Marmol's opinion.

Plaintiff next argues that the ALJ improperly assigned substantial weight to the state agency medical consultant's assessment, because that assessment was performed without the benefit of Plaintiff's MRIs. However, Plaintiff provides no support for her assertion that her MRIs were not considered. And the state agency medical consultant's opinion refers to an imaging impression showing degenerative disease of the L5/S1 disc. (R. at 297.) Furthermore, the ALJ properly attributed substantial weight to this opinion based on the consultant's explanations – which included citations to the record – and its consistency with the record as a whole. (R. at 20); *see, e.g.*, *Andrews v. Astrue*, No. 10-4932, 2011 WL 6756967, at *12 (D.N.J. Dec. 21, 2011) (citing 20 C.F.R. § 404.1527(f)(2)(ii)).

Plaintiff's assertion that the ALJ improperly discredited her subjective complaints is also unavailing. The ALJ explicitly considered Plaintiff's complaints of back pain, shaking, numbness, and tingling, but found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (R. at 17.) The ALJ noted that Plaintiff did not wear her back brace to the hearing and that Plaintiff testified that sometimes she does not wear the brace because "it itches." (*Id.*) The ALJ considered contradictory functional assessments from multiple doctors. And the ALJ considered Plaintiff's self-reported daily activities. *See* SSR 96-7p (listing factors an ALJ must consider in addition to objective medical evidence when assessing witness credibility). Finally, the ALJ specifically discussed the objective medical evidence of Plaintiff's pain management treatment, which included two epidural steroid injections, pain medication, and brief physical therapy. (R. at 18.) However, the ALJ noted that as of March 6, 2010, Plaintiff had received no further pain management treatment, other than medication. (*Id.*) Thus, the ALJ properly evaluated Plaintiff's subjective complaints, and did not err in finding that her statements were not entirely credible.

---

[2] Dr. Marmol's conclusion that Plaintiff was unable to work is entitled to no special significance, and is an opinion reserved to the Commissioner. *See* 20 C.F.R. § 404.1527; Wright v. Sullivan, 900 F.2d 675, 683 (3d Cir. 1990).

Finally, Plaintiff's argument that the ALJ's definition of low stress work is inconsistent with the definition of stress in SSR 85-15 fails. In the RFC assessment, the ALJ stated:

> . . . [A]s to the *mental demands* of work, I find that claimant is able to perform jobs . . . that are low stress (that is, these jobs require only an occasional change in the work setting during the work day, only an occasional change in decision making required during the work day, and, if production based, production is monitored at the end of the day rather than consistently throughout it) . . . ."

(R. at 16.) Plaintiff appears to argue that, under SSR 85-15, a low stress job must involve little or no supervision. However, contrary to Plaintiff's assertions, SSR 85-15 simply provides that an individual with a mental impairment may be unable to tolerate supervision and that this type of limitation should be accounted for in an RFC assessment. Further, the ALJ's RFC determination properly accounts for Plaintiff's difficulties in dealing with stress by limiting her to jobs that require only occasional changes in the work setting and only occasional changes in decision making, and by stating that if production based tasks were involved, the production must be monitored at the end of the day, rather than consistently throughout. (R. at 16.)

Thus, the ALJ properly evaluated the record evidence when assessing Plaintiff's RFC. Moreover, substantial evidence supports the ALJ's assessment that Plaintiff can engage in light work, subject to certain physical and mental restrictions. The Court will affirm the ALJ's findings at step four.

### B. The ALJ properly relied on the vocational expert's testimony at step five.

Because the ALJ found that Plaintiff's RFC was not consistent with the requirements of her past work as a warehouse clerk, she moved to step five. At step five, the ALJ considered testimony from a vocational expert, Mr. Meola. As noted above, at step four the ALJ determined that Plaintiff retained the capacity for light work, subject to certain physical and mental limitations. Meola testified that, given this RFC assessment, Plaintiff could perform other work that exists in substantial numbers in the national economy. (R. at 75-77.) Meola then responded to other

hypotheticals, which were based on Plaintiff's alleged, more severe limitations.[3] Mr. Meola responded to those hypotheticals by stating that such a person could not perform any job. (R. at 77-78.) Plaintiff argues that the ALJ's initial hypothetical was insufficient and that the subsequent hypotheticals containing Plaintiff's alleged limitations should have been controlling.

An ALJ does not have to present every alleged impairment to the vocational expert. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Rather, a hypothetical must account for "all of a claimant's impairments that are supported by the record" to be considered substantial evidence for an ALJ's decision. *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004) (quotations omitted). Thus, the ALJ need only present the claimant's "credibly established limitations." *Rutherford*, 399 F.3d at 554.

Mr. Meola's testimony in response to the ALJ's first hypothetical constitutes substantial evidence that Plaintiff can perform other work that exists in substantial numbers in the national economy. The first hypothetical was based on Plaintiff's credibly established limitations. The more stringent limitations contained in the subsequent hypotheticals were not necessary to support the ALJ's decision, because they were based on evidence that was properly discredited by the ALJ. Thus, the ALJ properly relied upon the first hypothetical to conclude that Plaintiff was not disabled at step five.

## IV. CONCLUSION

For the above reasons, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

   /s/ William J. Martini  
   **WILLIAM J. MARTINI, U.S.D.J.**

**Date: August 26, 2014**

---

[3] These subsequent hypotheticals contained the limitations of having to move from sitting to standing every ten to 15 minutes, being unable to concentrate more than six hours in a work day, and having mental issues that caused Plaintiff to miss work at least two days a month. R. at 77-78.